United States District Court
Southern District of Texas

**ENTERED**

July 09, 2026

Nathan Ochsner, Clerk

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| CHIDI AMADI, | § | CIVIL ACTION NUMBER |
| Petitioner, | § | 4:26-cv-02426 |
| | § | |
| | § | |
| versus | § | JUDGE CHARLES ESKRIDGE |
| | § | |
| | § | |
| WARDEN MARTIN FRINK, | § | |
| *et al*, | § | |
| | § | |
| Respondents. | § | |

**OPINION AND ORDER**

Pending is a petition by Petitioner Chidi Amadi for writ of *habeas corpus* and a motion by the Government for summary judgment. Dkts 1 & 8.

There's no dispute that Petitioner lacks lawful immigration status in the United States. But the Government asserts a single statutory basis for its present detention of Petitioner, being a provision with respect to the reinstatement of a removal order. See 8 USC §1231(a)(5). The parties agree that the legality of such detention rises and falls on a single, disputed fact. And that is, did Petitioner timely depart from the United States pursuant to his grant of voluntary departure?

Petitioner has established by a preponderance of the evidence that he did, in fact, timely depart from the United States by the pertinent date of September 13, 2005. This in turn means that his grant of voluntary departure did *not* become a removal order, which in turn undermines present detention pursuant to reinstatement of that purported removal order. In short, if there never was a removal order, there isn't a removal order that can now be reinstated.

Detention of Petitioner under §1231(a)(5) is thus unlawful at present. The petition will be granted, and the motion for summary judgment will be denied. Dkts 1 & 8.

### 1. Background

Petitioner Chidi Amadi is a native and citizen of Nigeria who initially entered the United States without inspection in 1999. Dkts 1 at ¶22 & 12-1 at ¶6. He married in 2001, and his wife then filed an I-130 petition for alien relative on his behalf. Dkt 12-1 at ¶¶7–8. Petitioner also applied for and received work authorizations between 2001 and 2003. Id at ¶¶9–11. But in May 2004, USCIS denied his I-130 application and initiated removal proceedings against him by issuing a notice to appear. Id at ¶¶13–16.

In May 2005, an immigration judge granted Petitioner voluntary departure, to be effected on or before September 13, 2005. See Dkt 8-2 (order of voluntary departure). The order stated in part as follows:

> [I]f the respondent fails to depart as required or fails to comply with any other condition for voluntary departure imposed by this order or by law or regulation, the above order shall be withdrawn without further notice or proceedings and the following order shall become immediately effective: the respondent shall be removed to Nigeria on the charge in the Notice To Appear.

Dkt 8-2 at 1. In effect, this meant that if Petitioner failed to timely depart, the voluntary departure order would become an order of removal.

The parties dispute when Petitioner departed from the United States. Petitioner maintains that he left in advance of the deadline of September 13, 2005, while the Government contends that he didn't depart until March 15, 2006. See Dkts 12-1 at ¶22 (declaration of deportation officer) & 13-1 at ¶3 (declaration of Petitioner).

Apart from the dispute over when Petitioner departed, he without question returned to the United States in April 2006 and has resided here without lawful permission since that time. Dkt 1 at ¶¶27–28.

On December 14, 2025, Petitioner was detained by ICE. Id at ¶30. ICE promptly issued him a notice of intent/decision to reinstate prior order. Dkt 12-1 at ¶26; see Dkt 13-1 at 50 (notice). He remains in ongoing immigration proceedings.

In March 2026, Petitioner filed applications for asylum, withholding of removal, and cancellation of removal. Dkt 1 at ¶¶33–34. He represents that on March 18th, an immigration judge concluded that he had complied with his prior voluntary departure order, such that the original NTA was no longer a valid charging document. Id at ¶¶35–36. He states the IJ ordered that "if DHS intend[ed] to pursue Petitioner's removal, it must issue a new NTA." Id at ¶36.

The record also reflects that the Government did issue Petitioner a new notice to appear on April 20, 2026. Dkts 13 at 2 & 13-1 at 28–30 (notice to appear). The Government was thus ordered to state a position as to what effect, if any, the new notice to appear would have on the applicable detention authority in this action. Dkt 14. In response, the Government indicated that the "improvidently issued" NTA was ineffective because it hadn't been filed with the immigration court. Dkt 15 at 4. The Government instead chose to stand on its position that Petitioner is detained under §1231(a)(5). Id at 1.

In April 2026, Petitioner expressed reasonable fear of returning to Nigeria. Dkt 12-1 at ¶27. USCIS determined that his reasonable fear claim wasn't credible, but an immigration judge later vacated that determination, finding that Petitioner "established a reasonable possibility that [he] would be persecuted on the basis of a protected ground, or a reasonable possibility that [he] would be tortured in the country of removal." Dkt 15-1 (order of immigration judge dated April 26, 2026). Petitioner was then placed in withholding-only

proceedings. Ibid. No further updates on such proceedings have been provided by the parties.

At hearing on June 22, 2026, the Government agreed that whether Petitioner is lawfully detained under §1231(a)(5) depends completely on whether he departed by September 2005. Dkt 19 (minute entry). The parties were given the opportunity to supplement the record with further factual or legal briefing. They didn't do so. The action is thus ripe for decision.

### 2. Legal standard

To be entitled to the issuance of a writ of *habeas corpus* under 28 USC §2241, the petitioner must show that he is "in custody in violation of the Constitution or laws or treaties of the United States." 28 USC §2241(c)(3). The *habeas* petitioner "bears the burden of proving that he is being held contrary to law; and because the *habeas* proceeding is civil in nature, the petitioner must satisfy his burden of proof by a preponderance of the evidence." *Skaftouros v United States*, 667 F3d 144, 158 (2d Cir 2011), citing *Parke v Raley*, 506 US 20, 31 (1992); see also *Bruce v Estelle*, 536 F2d 1051, 1058 (5th Cir 1976).

A court considering a *habeas* petition must "determine the facts, and dispose of the matter as law and justice require." 28 USC §2243.

### 3. Analysis

As noted above, the parties dispute whether Petitioner departed the United States by September 13, 2005. Petitioner maintains that he complied with the grant of voluntary departure by leaving the United States in September 2005. Dkt 1 at ¶22. He submitted a sworn declaration dated May 20, 2026, attesting to that fact. Dkt 13-1 at 3.

Documentary evidence corroborates his declaration. Petitioner submitted a commercial airline itinerary reflecting the purchase of a ticket in his name for a flight on September 13, 2005, from Houston, Texas to Paris, France, followed by a connecting flight to Lagos, Nigeria, on September 14, 2005. Dkt 10-1 at 13. His passport

4

likewise bears an admission stamp from Nigeria dated September 14, 2005, consistent with that itinerary. Id at 15–18. A report prepared by a United States consular officer following an interview with Petitioner in Nigeria on March 15, 2006, also records his unlawful presence in the United States as running from December 1999 to September 2005. Id at 19–21.

The Government contends to the contrary that Petitioner didn't depart until March 15, 2006. It submitted the declaration of Deporatation Officer Adedeji Akinyemi, which states in relevant part:

> On March 15, 2006, [Petitioner] departed the US via Houston, Texas. ERO believe this to be true based on an ERO database check that indicates the Nigerian Consulate reported the departure. ERO also indicated this date on the I-205— Warrant of Removal/Deportation that was issued on September 20, 2025. Further, [Petitioner] affirmed the March 2006 date in a sworn declaration he filed with the immigration court.
>
> Today, [Petitioner] asserts that he left the US on September 13, 2005. ERO has investigated this claim by looking at various US government databases. Specifically, ERO has checked the system used for passenger vetting known as Unified Passenger or UPAX. ERO was unable to find any entries related to [Petitioner's] alleged departure in 2005. ERO was unable to find any entries related to [Petitioner's] actual departure.

Dkt 12-1 at ¶¶22–23 (cleaned up).

The declaration acknowledges, at least implicitly, that the Government couldn't locate any travel-related data confirming the date of Petitioner's actual departure from the United States. As such, its assertion that Petitioner

5

departed in March 2006 is based on (i) a database entry based on a report by the Nigerian Consulate, and (ii) Petitioner's own declaration from January 2026.

The record is thus quite muddled. But Petitioner provides satisfactory explanations that sufficiently rebut the Government's position.

*As to the Nigerian Consulate report,* the Government asserts that Petitioner departed from the United States on March 15, 2006, based on a "database check that indicates the Nigerian Consulate reported the departure." Id at ¶22.

Petitioner responds that the Government's database entry indicating that his *departure* from the United States was on March 15, 2006, is incorrect, with such date instead reflecting his *appearance* at the US Consulate in Nigeria. Dkt 10 at 7. He declares in his sworn statement:

> Upon arriving in Nigeria, I was subjected to serious threats and harassment by religious extremists. As a result, I was unable to safely present myself to the US Consulate General in Lagos, Nigeria until March 2006.

Dkt 13-1 at 3 (declaration of Petitioner).

In accord, the report of the US consular officer reflects that Petitioner "was seen by Consular Officer, Lagos, Nigeria on" March 15, 2006. Dkt 10-1 at 21. And as noted above, that report also records Petitioner's unlawful presence in the United States as running from December 1999 to September 2005. Ibid.

*As to the declaration,* the Government references a declaration by Petitioner submitted in his immigration proceedings, dated January 12, 2026. Dkt 12-2 at 36–45. It states in relevant part:

> After entry into the United States, I returned to my home country in March of 2006 because I was granted voluntary departure after an immigration hearing in May 2005 and that was when I could raise

> funds for a flight and settle my affairs here in the United States before departing.

Id at 36.

Such account contradicts the May 20, 2026, declaration by Petitioner asserting that he departed in September 2005. See Dkt 13-1 at 3. But he explains in the latter that he was mistaken in the earlier declaration:

> When I was being processed in December 2025, I was in a state of confusion which is why I mixed up the dates when asked by my lawyer and the deportation officer, March 2006 date was the date my appearance at the US Consulate—not the date of physical departure from the United States. I spent 7 months in Nigeria while facing serious persecution which I believed will cost me my life.

Ibid.

The declarations are certainly in tension. But it must be kept in mind that the disputed facts occurred over twenty years ago. In such light, and even with credibility at issue, Petitioner's prior statement doesn't outweigh the clear documentary evidence submitted by Petitioner regarding the timing of his departure.

Petitioner has established by a preponderance of the evidence that he departed the United States by September 13, 2005. This means that Petitioner wasn't previously subject to a final removal order. As such, he cannot be detained pursuant to reinstatement of removal order under §1231(a)(5).

### 4. Conclusion

The motion by the Government for summary judgment is DENIED. Dkt 8.

The petition for writ of *habeas corpus* by Petitioner Chidi Amadi is GRANTED. Dkt 1.

7

The Government is ORDERED to release Petitioner Chidi Amadi from custody within twenty-four hours of this Order.

The Government is also ORDERED when doing so to (i) notify Petitioner's counsel by email no less than two hours before release of the exact location and time of Petitioner's release, (ii) release Petitioner under conditions no more restrictive than those in place prior to the detention at issue in this case, and (iii) return all personal property that was confiscated from Petitioner upon detention.

The Government is further ORDERED to file an advisory as to the current status of Petitioner by July 13, 2026.

For the avoidance of doubt, this decision means only that Petitioner's present detention may not continue pursuant to 8 USC §1231(a)(5). No opinion is expressed as to whether Petitioner may be detained at a later time or on another basis.

SO ORDERED.

Signed on July 9, 2026, at Houston, Texas.

Honorable Charles Eskridge
United States District Judge